IN RE ESTATE OF S. S. MANN.

T. J. BRACKEN, Administrator, Appellant, v. T. E. MANN
et al., Appellees.

**WILLS:** Election—Dower (?) or Will (?)—Estoppel. A widow who,
1   with full knowledge of every material fact affecting the extent of
her husband's estate, freely and voluntarily accepts the provisions
of her husband's will in her behalf is estopped to change her elec-
tion. So held where the material fact was that the husband had,
prior to marriage, incorporated his landed holdings and distri-
buted his corporate stock to his children. (See Book of Anno., Vol.
1, Sec. 12007, Anno. 64 *et seq*.)

**DOWER:** Waiver—Antenuptial Conveyance—Fraud—Burden of Proof.
2   A wife who pleads that her deceased husband fraudulently disposed
of his property prior to marriage, in order to deprive her of the
interest which she would take as a wife, must establish (1) an
existing contract of marriage between herself and the deceased at
the time of the conveyance by the deceased, and (2) that she had
no knowledge of such conveyance prior to her marriage. (See Book
of Anno., Vol. 1, Sec. 11990, Anno. 82.)

**DEPOSITIONS:** Admissibility in Evidence—Action Between Different
3   Parties. In an equitable action by an administrator to enforce the
dower rights of the deceased, the deposition of the deceased taken
in another action between other and different parties is entitled
to no consideration on an issue on which the administrator has the
burden of proof.

Headnote 1: 40 Cyc. p. 1985. Headnote 2: 19 C. J. p. 515 (Anno.)
Headnote 3: 18 C. J. p. 751.

*Appeal from Tama District Court.*—B. F. CUMMINGS, Judge.

APRIL 6, 1926.

PROCEEDING in probate for the admeasurement of dower.
After a full hearing, the probate court dismissed the petition.
The plaintiff appeals.—*Affirmed*.

*James H. Willett* and *E. N. Farber,* for appellant.

*C. E. Walters* and *Struble & Stiger,* for appellees.

EVANS, J.—The decedent was S. S. Mann, who died in Tama County in March, 1918. On and prior to December, 1905, the decedent was owner of 540 acres of farm land in Tama County. He had been a resident of Tama County and an occupant of his land for many years. On the date named, however, and for a few years prior thereto, he had been a resident of Fairhope, Alabama,—a single-tax colony, of which the decedent was president. On such date he, with two of his sons, organized a corporation, with a capital stock of $50,000, to which he conveyed his Tama County lands. Such corporation held the title at all times thereafter. On this date, he was an unmarried man. He had, however, been twice married, his second marriage having resulted in a divorce. There were ten children as the fruit of the first marriage, and five children as the fruit of the second. His principal purpose in so disposing of his property was to facilitate the management thereof, as between him and his children, and the final distribution thereof among his children. The stock of the corporation consisted of 1,000 shares, of which the decedent held 998, in the first instance. These shares were subsequently distributed by donation among his children, the dividends thereof, however, being reserved for himself during his lifetime, and the voting power thereof.

On or about March, 1906, the decedent was married to the plaintiff herein, who is known in the record as Mary Mann. She was also a member of the single-tax colony. At the time of such marriage, the decedent was 76 years of age, and the plaintiff herein was 11 years his junior. For five or six years thereafter, they continued to live at Fairhope, Alabama, and thereafter moved to Tama County, and lived for several years upon one of the farms in question. Later, they built a home at Gladbrook, which they occupied up to the time of the death of decedent. Some years before his death, the decedent had distributed all of the shares of the capital stock to his children, save one. For some years, also, the children had managed the

1. WILLS: election: dower (?) or will (?): estoppel.

corporation, pursuant to an arrangement whereby they were to pay an annuity to the decedent and his wife, during his lifetime. The decedent left a will, which was duly admitted to probate, and which purported to make provision for the wife. He devised to her certain specific property and one third of his estate. Such provision, however, did not purport to include any part of the farms in question, nor of the shares of stock of the corporation. Shortly after his death, the plaintiff voluntarily accepted the property devised to her by the will, and sold all that part thereof situated in Tama County,—some of it to the corporation. For this property she received the sum. of $3,000. She took also, under the will, certain property at Fairhope, Alabama, including "the winter home and the pecan orchard" and 160 acres of cheap land. This property she sold to parties in Alabama. The transaction between her and the heirs whereby she took the property devised to her by the will appears to have been amicable and without controversy. Her daughter by a former marriage assisted her in the transaction. The present suit was brought three years later. Within a few months after the bringing of the same, the widow, named as plaintiff, died, and the proceeding has since been prosecuted by her administrator. No formal written election was ever made by the widow to accept under the will. Her actual acceptance, however, is pleaded by the defendants herein as an estoppel against the relief now prayed.

Inasmuch as the will gave to the widow the one third of the property of the decedent, in addition to specific property, and inasmuch as one third is the utmost that she could claim under the statute, it would seem as though no room was left for controversy over the extent of her interest in her husband's estate. Though the action purports to be one for the admeasurement of dower, it is not such in fact. Concededly, the widow received, in fact, one third of all the estate which the defendant purported to own or to have at the time of his death, and more than one third of all the real estate which he purported to own or have at any time during the marriage. The petition charges fraud on the part of the decedent in the disposition made by him of his Tama County farms, by conveyance thereof to the

corporation. It is averred that he was at that time engaged to be married to the plaintiff, and that he converted his real estate into personalty for the purpose of defrauding the intended wife. The prayer of the petition is, in substance, that the court nullify all the corporate transactions and ignore the existence of the corporation, as being a mere cover, and that the title to the Tama County lands be re-established and confirmed in the decedent, and that the dower right of the plaintiff be established therein. It will be noted, therefore, that, though the action is on the law side of the docket, as a proceeding in probate, the relief sought is purely equitable. Inasmuch, however, as the case appears to have been tried on its merits, without close regard to the pleadings, we shall consider it in like manner.

No direct evidence was offered of the date or time when the engagement of marriage was entered into, and no direct evidence, therefore, that the decedent was engaged to the plaintiff at the time of his transfer to the corporation. Circumstantial evidence is relied on, which consists of a showing that for one or two years an apparent courtship had been going on between the parties. This is the general character of the circumstantial evidence. The daughter of the plaintiff testified that, about two years before the marriage, the decedent called the plaintiff "my dear," and the plaintiff called the decedent "old posy." The foregoing is the principal specific circumstance that appears in the evidence. Whether the appellation applied to the decedent carried an endearing inflection is not disclosed. It is to be noted that the marriage occurred within a few months after the organization of the corporation, and this is a circumstance to be considered, in support of other circumstances tending to show the time of the engagement. If the plaintiff failed at no other point in her case, we should be strongly disposed to indulge in sufficient inference to save her from failure at this particular point.

It was incumbent upon the plaintiff, not only to show an existing contract of marriage between herself and the decedent at the time of the conveyance, but to show also that she was not advised of such conveyance at or about the time thereof, and before her marriage. At this point the record discloses no competent evidence. The

2. DOWER: waiver: antenuptial conveyance: fraud: burden of proof.

plaintiff relies upon certain evidence given by the plaintiff herself in a deposition in a case between other parties. Reference to such evidence will be made later herein.

We pass to a consideration of plaintiff's acceptance of the provisions made for her by the will. The claim is made for her that she did not then know the essential facts, which came to her later; and such is the only ground of avoidance put forth. In support of this claim, the plaintiff relies upon the deposition already referred to. It appears that a suit was pending between the two sets of heirs of the decedent,

3. DEPOSITIONS: admissibility in evidence: action between different parties.

wherein the children of the second marriage were prosecuting an action against those of the first marriage, for a more equitable distribution of the estate. The plaintiffs in that action took the deposition of the plaintiff herein, as a witness. This is the deposition offered in evidence by the plaintiff in proof of her discovery of facts and in explanation of her long delay in recanting her first acceptance. The deposition was received, subject to proper objection by the defendants. In view of the death of the plaintiff shortly after the beginning of the action, we are disposed to close our eyes to the objections, and to read the deposition. It appears therefrom that this suit was instigated by one of the plaintiffs in the other litigation, and that such instigation was attended with an assertion that the decedent's estate was worth $250,000. The following is plaintiff's deposition on the subject now under consideration:

"He did not look after his own affairs, wholly. T. E. Mann lived right at the side of us. He had all to do with his affairs. He rented the farms and collected the rents. Mr. Mann had several farms, but it was incorporated, and they looked after those things. They had it incorporated, and each one of them had so many shares in the corporation. It was known as the S. S. Mann Corporation, and S. S. Mann was my husband. T. E. Mann had charge of the affairs of the S. S. Mann Corporation, mostly. * * * Q. Were you told what the value of the estate would amount to? A. The estate? Q. Yes. A. Well, it must have been $250,000, anyway. Q. Well, were you told that at the time you executed the papers? A. No. Q. What is

that? A. No. Q. When did you learn that? A. Recently. Q. How long ago? A. About two months ago. * * * I sold my home in Gladbrook for $3,000. Q. And that was all that you knew anything about, that the estate had? A. Yes. I knew that it was all incorporated, and I was told that I could not get any more. I knew there was more all the time, but I wasn't going to make a fuss. I learned two months ago that the estate was worth $250,000, and the estate up there. I was advised by my friends and neighbors to sell for $3,000. I didn't execute any receipts; I didn't employ any attorney, and didn't make any investigation as to the property of Mr. Mann.''

It will be noted from the foregoing that the new fact discovered by the plaintiff ''two months ago'' was that her husband's estate was worth $250,000. The answer to this discovery, as indicated by the record, is that the estate was *not* worth $250,000, nor approximately such sum, even though the property of the corporation had been included. She did know of the corporation and its method of operation, and that it owned the farms. There is no claim that this knowledge came to her as a discovery after her acceptance of the property devised in the will. For aught that appears in the record, including her deposition, she knew about the corporation and its purpose and method as long as it had been in existence. Confessedly she knew about it when she accepted the property devised by the will. The fact, if such, that she did not know that it was worth $250,000 is quite beside the mark. There was no after discovery of property which was not known to the plaintiff at the time of such acceptance. In renouncing her actual acceptance under the will, the plaintiff has tendered back nothing. We think it must be held that she took such property voluntarily, and with full knowledge of every material fact then existing. No fraud was practiced upon her by anyone, nor was she misled as to the facts by anyone. We deem it clear that she must be held to have taken under the will, and that she is estopped from further election. As a taker under the will, her rights rise no higher than those of the testator. Any transaction that was binding upon him in his lifetime, as affecting his title, is binding upon the plaintiff, as his devisee.

To avoid any future misleading, we ought also to say that the objection to the deposition in question was well taken, and that the plaintiff is not legally entitled to its consideration.

The decree of the district court is, accordingly,—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.